IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FEDERAL EXPRESS CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>MY PILLOW, INC.<br><br>Defendant. | Civil Action No. |

## ORIGINAL COMPLAINT

Plaintiff, Federal Express Corporation ("FedEx"), files this Complaint against Defendant My Pillow, Inc. ("My Pillow") and for its claims for relief states:

### PARTIES

1. Federal Express Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Memphis, Tennessee.

2. My Pillow, Inc. is a Minnesota corporation with its principal place of business in Chaska, Minnesota. It may be served with this Complaint through either its registered agent for service, Doug Wardlow, or its CEO Michael Lindell both at 1550 Audubon Road, Chaska, MN 55318.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this entire action pursuant to 28 U.S.C. § 1332 because this is a civil action where the amount in controversy exceeds $75,000 and is between citizens of different States. Specifically, FedEx is a citizen of the States of Delaware and Tennessee while My Pillow is a citizen of the State of Minnesota.

4. This Court has personal jurisdiction over My Pillow because, as more fully shown below, My Pillow transacted business in Tennessee, including by entering into the contract made the basis of this suit that was to be performed in whole or in part in Tennessee. Further, My Pillow engaged in interstate communications with FedEx in Tennessee and contracted for services to be provided in Tennessee.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this judicial district is where a substantial part of the events or omissions giving rise to the claims in this suit occurred. Specifically, the majority of the injuries to FedEx occurred in the Western District of Tennessee. Defendant utilized FedEx's computer systems, which are housed primarily in the Western District of Tennessee, the FedEx computer systems that allowed Defendant to open and misuse the subject shipping accounts are maintained in the Western District of Tennessee, and the majority of the FedEx shipping network used by Defendants is routed through the Western District of Tennessee.

**FACTS**

6. This suit has become necessary to collect almost $9 million owed by My Pillow for shipping services provided by FedEx for which My Pillow has failed to pay despite multiple pre-litigation efforts.

7. The parties' recent contractual relationship goes back to February 2021 when FedEx and My Pillow's predecessor, MP Distribution, LLC, entered into a Transportation Services Agreement (the "Contract"). Over the next several years, the Contract was amended several times to adjust pricing and allow for corporate changes requested by My Pillow's representatives, employees and agents. Most recently, and relevant to the invoices at issue in this lawsuit, My Pillow signed an Amendment to the Contract on January 10, 2024, which set forth the existing

terms and conditions under which My Pillow was authorized to ship packages through the FedEx enterprise.

8. Importantly, the Contract incorporates the FedEx Service Guide (in effect at the time of each shipment) and the terms and conditions thereof. In this regard, the relevant version of the FedEx Service Guide provides, among other things, that "[t]he party to whom a FedEx account number is issued is liable for all charges to the account…". The Contract and the Service Guide both mandate that invoices are due and payable within fifteen (15) days from the invoice date and the Service Guide specifies that late fees equal to 8% of total past-due balances may be applied to invoices not timely paid. The Service Guide also establishes that senders and/or shippers responsible for payment are liable for costs to collect payment, including attorney's fees, interest and court costs.

9. Beginning September 2024, My Pillow materially violated the terms of its Contract with FedEx when it substantially slowed paying its invoices. Despite multiple promises to pay by Mike Lindell, My Pillow's owner, and various suggested payment plans, delinquencies increased. As a result, per the terms of the Contract, FedEx placed My Pillow's account on a cash-only basis and stopped shipping for My Pillow altogether as of December 2024.

10. On January 13, 2025, My Pillow was sent written notice advising that its shipping accounts with FedEx would be terminated altogether in thirty (30) days due to non-payment of outstanding invoices. Demand was also made for payment of all outstanding invoices, then totaling more than $8.5 million. My Pillow was advised that if payment was not received within thirty (30) days, FedEx would exercise all legal rights and remedies available to it.

11. Despite the foregoing notification and demand, My Pillow has not made any payments since receipt of the January 2025 letter. Accordingly, this action has become necessary to collect

amounts due and owing to FedEx, which continue to accrue, including late fees. My Pillow's debt to FedEx currently totals at least $8,801,710.93.

## COUNT I
## BREACH OF CONTRACT

12. The allegations in paragraphs 6 to 11 are incorporated by reference as if set forth fully herein.

13. My Pillow entered into the Contract with FedEx wherein, among other things, My Pillow promised to pay for all shipments made through the FedEx enterprise.

14. My Pillow materially breached the Contract by failing and refusing to pay invoices for shipments it placed with FedEx.

15. As a direct and proximate result of My Pillow's breaches of the Contract, FedEx has been damaged. Specifically, My Pillow owes at least $8,801,710.93 as of the filing of this lawsuit for unpaid shipping charges and late fees. In addition, My Pillow is liable for FedEx's legal fees associated with this action, pre-judgment and post-judgment interest and all court costs made necessary by its conduct.

## COUNT II
## UNJUST ENRICHMENT (Alternative)

16. The allegations in paragraphs 6 to 15 are incorporated by reference as if set forth fully herein.

17. Alternatively, should My Pillow be found not liable to FedEx for breach of contract, My Pillow is nonetheless obligated to pay FedEx for shipping services that FedEx provided to My Pillow but for which My Pillow failed and refused to pay.

18. As a direct and proximate result of My Pillow's unlawful and improper conduct, as described above, My Pillow was conferred benefits by FedEx in the form of shipping services. My

Pillow was aware it was receiving such benefits and accepted them under such circumstances that it would be unfair, unjust and inequitable for My Pillow to retain these benefits without payment. Specifically, My Pillow was unjustly enriched with shipping services from FedEx for which My Pillow has failed and refused to pay. Accordingly, in the alternative, My Pillow is liable to FedEx under a theory of unjust enrichment for the value of shipping services provided by FedEx.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that Defendant be summoned to appear herein, and that upon final adjudication of this matter, Plaintiff have and recover the following from Defendant:

(a) Actual damages;

(b) Attorneys' fees incurred to enforce FedEx's contractual rights, including through final judgment and upon any unsuccessful appeals;

(c) Prejudgment and post-judgment interest on these sums at the highest applicable rate;

(d) Costs of court; and

(e) All other and further relief as the Court may deem equitable and just.

Respectfully submitted,

/s/ *Jason R. Bernhardt*
Jason R. Bernhardt
FEDERAL EXPRESS CORPORATION
Bar No. 24045488
3620 Hacks Cross Road
Building B – 3rd Floor
Memphis, Tennessee 38125
Telephone:  (901) 434-8500
Facsimile:   (901) 434-9279
jasonbernhardt@fedex.com
*Counsel for Plaintiff Federal Express Corporation*